1   JAMES R. MCGUIRE (CA SBN 189275)
    JMcGuire@mofo.com
2   GREGORY P. DRESSER (CA SBN 136532)
    GDresser@mofo.com
3   RITA F. LIN (CA SBN 236220)
    RLin@mofo.com
4   GRACE Y. PARK (CA SBN 239928)
    GracePark@mofo.com
5   MORRISON & FOERSTER LLP
    425 Market Street
6   San Francisco, California  94105-2482
    Telephone: 415.268.7000
7   Facsimile: 415.268.7522

8   JENNIFER C. PIZER (CA SBN 152327)
    JPizer@lambdalegal.org
9   LAMBDA LEGAL, Western Regional Office
    3325 Wilshire Boulevard, Suite 1300
10  Los Angeles, California 90010-1729
    Telephone: 213.382.7600
11  Facsimile: 213.351.6050

12  Attorneys for Plaintiff
    KAREN GOLINSKI
13

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

16                   OAKLAND DIVISION

17

18  KAREN GOLINSKI,                          Case No.   4:10-cv-00257 (SBA)

19              Plaintiff,                    **PLAINTIFF KAREN
                                             GOLINSKI'S REPLY IN
20        v.                                 SUPPORT OF MOTION FOR
                                             PRELIMINARY INJUNCTION**
21  UNITED STATES OFFICE OF PERSONNEL
    MANAGEMENT, and JOHN BERRY, Director     Date:    June 15, 2010
22  of the United States Office of Personnel  Time:    1:00 p.m.
    Management, in his official capacity,     Place:   Courtroom 1, 4th Floor
23                                                     United States Courthouse
              Defendants.                              1301 Clay Street
24                                                     Oakland, California 94612

25

26

27

28

1

**TABLE OF CONTENTS**

2

Page

3  INTRODUCTION ........................................................................................................ 1

4  ARGUMENT ............................................................................................................... 1

   I.    STANDARD OF REVIEW .................................................................................. 1

5  II.   OPM'S ATTACK ON THE EDR TRIBUNAL'S JURISDICTION FAILS ...................... 2

6        A.   OPM Waived Its Challenge to the EDR Tribunal's Jurisdiction ............................ 2

7        B.   Sovereign Immunity Does Not Bar Relief ................................................................ 3

8             1.   OPM Cites No Authority for the Novel Proposition that the
                   Government Is Immune from Ordering Itself to Change Its Policies. ........ 3

9             2.   Golinski Seeks Only Prospective Injunctive Relief ...................................... 3

              3.   In Any Event, Any Applicable Immunity Has Been Waived ...................... 5

10       C.   Even if OPM Could Collaterally Attack the EDR Tribunal's Jurisdiction,
              Its Attack Fails on the Merits ..................................................................................... 5

11            1.   OPM's Argument Would Deny Judicial Employees Who Suffer
12                 Discrimination Any Forum Capable of Awarding Full Relief .................... 5

13                 a.   The EDR Process Is the Sole Available Avenue of Relief for
                        Judicial Employees Like Golinski .................................................... 5

14                 b.   To Remedy Violations Found in the EDR Process, the
15                      Judiciary Must Be Able to Demand the Executive's
                        Cooperation and Non-Interference .................................................. 6

16            2.   The Chief Judge Correctly Concluded that the Judiciary Has
                   Authority to Provide Golinski a Remedy Without Interference from
17                 the Executive Branch ....................................................................................... 8

18                 a.   The EDR Tribunal Has Broad Statutory Authority to Enter
                        Orders "Necessary and Appropriate" for the Administration
                        of Justice ........................................................................................... 8

19                 b.   The Judiciary Also Has Inherent Power to Govern Its
20                      Affairs Without Interference from Other Branches ........................ 9

21                 c.   Congress Has Repeatedly Acknowledged the Judiciary's
                        Inherent and Statutory Power in This Regard ............................... 10

22            3.   Nowhere Does the Chief Judge's Order Claim Plenary Authority to
                   Review OPM's Administration of the FEHB Plan .................................. 11

23  III.  NOTHING ELSE BARS GRANT OF A PRELIMINARY INJUNCTION .................... 12

24       A.   Mandamus Relief Is Appropriate to Enforce the Chief Judge's Orders ............... 12

              1.   OPM Misunderstands the Requirement that Its Duty to Comply Be
25                 "Free From Doubt." .................................................................................... 12

              2.   The Stay of Blue Cross's EDR Appeal is Irrelevant ............................... 12

26       B.   Golinski Will Suffer Irreparable Injury ................................................................... 13

27            1.   OPM Waived Any Argument Against Irreparable Injury ........................ 13

28            2.   Golinski Faces Ongoing Discrimination .................................................. 13

**TABLE OF CONTENTS**
**(continued)**

Page

3.    Inadequate Health Insurance Causes Real Anxiety ................................... 14

4.    Golinski's Injuries Were Not Compensated By Back Pay Alone ............. 14

5.    Golinski Did Not Delay Her Motion for Preliminary Injunction ............. 14

C.    The Balance of the Hardships Favors Golinski ...................................................... 15

D.    The Public Interest Favors Golinski ...................................................................... 15

CONCLUSION ...................................................................................................................... 15

1
2

# TABLE OF AUTHORITIES

3

Page(s)

4

CASES

5

*Angotti v. Rexam, Inc.*,
  No. C 05-5264, 2006 WL 1646135 (N.D. Cal. June 14, 2006).............................................. 14

6
7

*Barron v. Reich*,
  13 F.3d 1370 (9th Cir. 1994) ................................................................................................ 12

8

*Beeman v. Olson*,
  828 F.2d 620 (9th Cir. 1987) .................................................................................................. 4

9
10

*Blankenship v. McDonald*,
  176 F.3d 1192 (9th Cir. 1999) ............................................................................................ 5, 6

11
12

*Chalk v. United States Dist. Court*,
  840 F.2d 701 (9th Cir. 1988) ................................................................................................ 13

13

*City of Tempe v. FAA*,
  239 F.Supp.2d 55 (D.D.C. 2003) .......................................................................................... 15

14
15

*Cupolo v. Bay Area Rapid Transit*,
  5 F.Supp.2d 1078 (N.D. Cal. 1997)...................................................................................... 13

16
17

*Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.*,
  448 F.3d 1118 (9th Cir. 2006) ................................................................................................ 1

18

*Dotson v. Griesa*,
  398 F.3d 156 (2d Cir. 2005) ................................................................................. 6, 9, 10, 11

19
20

*Dugan v. Rank*,
  372 U.S. 609 (1963) ............................................................................................................... 4

21
22

*Duke v. Langdon*,
  695 F.2d 1136 (9th Cir. 1983) .............................................................................................. 14

23

*Ex parte Peterson*,
  253 U.S. 300 (1920) ............................................................................................................... 9

24
25

*Exxon Shipping Co. v. United States Dep't of Interior*,
  34 F.3d 774 (9th Cir. 1994) .................................................................................................... 3

26
27

*Federated Dep't Stores, Inc. v. Moitie*,
  452 U.S. 394, 398 (1981) ....................................................................................................... 2

28

*Fed. Mar. Comm'n v. South Carolina State Ports Authority*,
   535 U.S. 743 (2002) ...................................................................................................... 3

*Fund for Animals v. Frizzell*,
   530 F.2d 982 (D.C. Cir. 1976) ..................................................................................... 15

*Gilder v. PGA Tour, Inc.*,
   936 F.2d 417 (9th Cir. 1991) ....................................................................................... 15

*Godfrey v. DOT*,
   2010 MSPB LEXIS 991 (M.S.P.B. Feb. 19, 2010) ..................................................... 11

*Golden State Bottling Co. v. NLRB*,
   414 U.S. 168 (1973) ........................................................................................................ 7

*Hanford v. United States.*,
   63 Fed. Cl. 111 (Fed. Cl. 2004) ...................................................................................... 3

*Hilbert v. Dooling*,
   476 F.2d 355 (2d Cir. 1973) ....................................................................................... 8, 9

*I.M.A.G.E. v. Bailar*,
   518 F.Supp. 800 (N.D. Cal. 1981) ............................................................................... 13

*In re Golinski*,
   587 F.3d 956 (9th Cir. 2009) ......................................................................... 6, 7, 11, 13

*In re Certain Complaints Under Investigation by an Investigating Comm.*,
   783 F.2d 1148 (11th Cir. 1986) ...................................................................................... 9

*In re Imperial "400" Nat. Inc.*,
   481 F.2d 41 (3d Cir. 1973) ............................................................................................. 8

*Kincaid v. City of Fresno*,
   No. 1:06-cv-1445 OWW SMS, 2006 WL 3542732 (E.D. Cal. Dec. 8, 2006) ........... 13

*Lee v. Hughes*,
   145 F.3d 1272 (11th Cir. 1998) ...................................................................................... 6

*Leedom v. Kyne*,
   358 U.S. 184 (1958) ........................................................................................................ 4

*Momento, Inc. v. Seccion Amarilla USA*,
   No. C 09-1223 (SBA), 2009 WL 1974798 (N.D. Cal. July 8, 2009) ......................... 15

*Nat'l Council of Arab Ams. v. City of New York*,
   331 F.Supp.2d 258 (S.D.N.Y. 2004) ........................................................................... 15

*Orsay v. United States DOJ*,
   289 F.3d 1125 (9th Cir. 2002) ........................................................................................ 6

*San Diego Minutemen v. Calif. Bus., Transp. & Hous.,*
    570 F.Supp.2d 1229 (S.D. Cal. 2008) ...................................................................... 2

*Schalk v. Teledyne, Inc.,*
    751 F.Supp. 1261 (W.D. Mich. 1990) .................................................................... 14

*Stanley v. Univ. of S. Calif.,*
    13 F.3d 1313 (9th Cir. 1994) .................................................................................. 13

*Sullivan v. Vallejo City Unified Sch. Dist.,*
    731 F.Supp. 947 (E.D. Cal. 1990) .......................................................................... 13

*Sunshine Anthracite Coal Co. v. Adkins,*
    310 U.S. 381 (1940) .................................................................................................. 2

*Travelers Indem. Co. v. Bailey,*
     129 S. Ct. 2195 (2009) ............................................................................................. 3

*United States v. Baker,*
    641 F.2d 1311 (9th Cir. 1981) .................................................................................. 7

*United States v. Hall,*
    472 F.2d 261 (5th Cir. 1972) .................................................................................... 7

*Veit v. Heckler,*
    746 F.2d 508 (9th Cir. 1984) .................................................................................... 6

*Wayman v. Southard,*
    23 U.S. 1 (1825) ....................................................................................................... 9

*West v. Gibson,*
    527 U.S. 212 (1999) .................................................................................................. 5

**STATUTES**

2 U.S.C.
    § 1302 ...................................................................................................................... 11
    §§ 1381-1385 ........................................................................................................... 11

5 U.S.C.
    § 702 .......................................................................................................................... 5
    § 1204 ...................................................................................................................... 11
    §§ 2104-2105 ............................................................................................................. 4
    §§ 8901-8903 ............................................................................................................. 4
    § 8913 ........................................................................................................................ 4

28 U.S.C.
    § 332 ...................................................................................................................... 8, 9

Act of Sept. 24, 1789, ch. 20, §§ 2, 4, 1 Stat. 73, 76 ................................................. 9, 10

Administrative Office of the United States Courts Personnel Act of 1990,
    Pub. L. 101-474, 104 Stat. 1097 ........................................................................ 10

RULES AND REGULATIONS

5 C.F.R.
    § 250.103 ............................................................................................................. 5
    § 250.301 ............................................................................................................. 5
    § 890.103 ............................................................................................................. 4
    § 890.104 ............................................................................................................. 6
    § 890.107 .......................................................................................................... 5, 6

OTHER AUTHORITIES

Bermant & Wheeler,
    *Federal Judges and the Judicial Branch*, 46 MERCER L. REV. 835 (1995) ............................. 9

H.R. Rep. 101-770(I), (1990) .................................................................................. 7, 10

JUD. CONF.,
    STUDY OF JUDICIAL BRANCH COVERAGE PURSUANT TO THE CAA (Dec. 1996) ...................... 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

Defendants U.S. Office of Personnel Management and its director John Berry (collectively, "OPM") devote most of their opposition brief to a collateral attack on the EDR tribunal's jurisdiction. OPM, however, waived those arguments in declining to appeal that tribunal's order. OPM protests that it was not "in privity" with Golinski's employing office, the respondent in that proceeding. But Supreme Court precedent holds that U.S. government agencies are in privity with other agencies of that same government for purposes of *res judicata*.

Even if OPM had not waived its collateral attack, it is wrong on the merits. OPM insists that it is "immune" from the EDR tribunal's orders. OPM, however, cites no authority for the unusual notion that the federal government violates sovereign immunity when it orders *itself* to change a policy. Moreover, even if sovereign immunity could be extended to that novel context, it does not apply here because Golinski seeks prospective injunctive relief only.

OPM then argues that the EDR tribunal lacked statutory authority to require OPM to cease interfering with the tribunal's orders. Binding Ninth Circuit law holds that the EDR process is Golinski's *sole* available recourse to seek relief for the discrimination she is suffering. It cannot be that the EDR tribunal is powerless to ensure she receives the relief to which she is entitled. To the contrary, as Congress has repeatedly recognized, the Judiciary possesses both statutory and inherent authority to resolve workplace complaints without interference from other branches.

In sum, OPM cannot escape the enforcement of a valid, binding order that it declined to appeal. Golinski's preliminary injunction motion should be granted.

**ARGUMENT**

**I.      STANDARD OF REVIEW.**

OPM incorrectly asserts that a more stringent level of review applies here because Golinski seeks a "mandatory" preliminary injunction that would alter the status quo. (Opp'n at 7:4-7.) But the "status quo" is not "simply any situation before the filing of the lawsuit, but rather, the last uncontested status that preceded the parties' controversy." *Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006). Golinski's motion, which seeks rescission of OPM's unwarranted guidance, is prohibitory — not mandatory — because it would

1    maintain the uncontested state of affairs that existed preceding this action.  *See San Diego*

2    *Minutemen v. Calif. Bus., Transp. & Hous.*, 570 F. Supp. 2d 1229, 1248 (S.D. Cal. 2008)

3    (although defendant removed plaintiff's signs when suit was filed, plaintiff's preliminary

4    injunction motion, seeking restoration of signs, was prohibitory in nature).

5                **II.    OPM'S ATTACK ON THE EDR TRIBUNAL'S JURISDICTION FAILS.**

6                **A.    OPM Waived Its Challenge to the EDR Tribunal's Jurisdiction.**

7          OPM devotes almost its entire brief to arguments that it waived when it declined to appeal

8    Chief Judge Kozinski's November Order.  OPM asserts it may collaterally attack the jurisdiction

9    of the EDR tribunal because OPM was not a party to proceedings between Golinski and her

10   employing office.  (Opp'n at 17:1-18:7.)  The Supreme Court, however, has held otherwise.

11         In *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381 (1940), Sunshine, a coal mining

12   company, filed suit against the National Bituminous Coal Commission, an agency under the

13   Department of the Interior.  *Id.* at 388.  Sunshine sought to avoid a tax because its coal was not

14   bituminous.  *Id.* at 390.  After the Commission determined that the coal was bituminous,

15   Sunshine sued the Collector of Internal Revenue to enjoin the collection of the tax.  *Id.* at 391.

16   The Court held that Sunshine's suit was barred by *res judicata*.  The Court found that the

17   Commission was in privity with the Collector of Internal Revenue because "***[t]here is privity***

18   ***between officers of the same government*** so that a judgment in a suit between a party and a

19   representative of the United States is *res judicata* in relitigation of the same issue between that

20   party and another officer of the government."  *Id.* at 402-03 (emphasis added).

21         Just as in *Sunshine*, the federal government had already participated, as Golinski's

22   employer, in the prior proceeding before the EDR tribunal.  (Opp'n at 4:9-12 (conceding that

23   Golinski's employing office is the "respondent" in the EDR proceedings).)  OPM is therefore

24   bound by the tribunal's decision because OPM is in privity with officers and agencies of the same

25   United States government.  (*See Id.* at 17:23-26 (citing *Federated Dep't Stores, Inc. v. Moitie*,

26   452 U.S. 394, 398 (1981).)  The Chief Judge's November Order already analyzed the very issue

27

28

1    that OPM raises here:  whether the EDR tribunal has the power to require OPM to stop interfering

2    with EDR orders.  Having declined to appeal that order, OPM waived its challenge to it.[1]

3                        **B.    Sovereign Immunity Does Not Bar Relief.**

4           Although OPM concedes it is not immune from suit before this Court, OPM says

5    sovereign immunity shields it from orders of the EDR tribunal.  (Opp'n at 7:17-8:10.)  That

6    argument fails for multiple reasons.

7                   **1.    OPM Cites No Authority for the Novel Proposition that the
                          Government Is Immune from Ordering Itself to Change Its
8                          Policies.**

9           Nowhere does OPM explain how sovereign immunity could conceivably bar the federal

10   government from ordering its *own* agencies to change their policies in an administrative hearing.

11   The case law on which OPM relies is unavailing.  (*Id.* at 10:27-11:7.)  *Fed. Mar. Comm'n v.*

12   *South Carolina State Ports Authority*, 535 U.S. 743, 760 (2002), holds that *states* can assert

13   sovereign immunity before a *federal* administrative tribunal.  And *Hanford v. United States*, 63

14   Fed. Cl. 111 (Fed. Cl. 2004), holds that the *federal* government can assert sovereign immunity

15   when haled into a *state* administrative tribunal.  Neither case supports the unusual notion that the

16   federal government has sovereign immunity against federal administrative orders issued to itself.

17   *Cf. Exxon Shipping Co. v. United States. Dep't of Interior*, 34 F.3d 774, 778-79 (9th Cir. 1994)

18   ("[L]imitations on a state court's subpoena and contempt powers stem from the sovereign

19   immunity of the United States and from the Supremacy Clause.  Such limitations do not apply

20   when a federal court exercises its subpoena power against federal officials.").

21                   **2.    Golinski Seeks Only Prospective Injunctive Relief.**

22          Even if this Court were to take the novel step of finding the federal government immune

23   from ordering itself to change its policies, it is well-established that sovereign immunity does not

24   prevent the issuance of prospective injunctive relief against a federal official where "the official

---

26          [1] OPM argues collateral attacks are permitted on orders "plainly beyond" a tribunal's
     jurisdiction.  (Opp'n at 18 n.13.)  Such attacks are permitted only in "rare," "exceptional
27   circumstances," like a bankruptcy court deciding a custody issue.  *Travelers Indem. Co. v. Bailey*,
     129 S. Ct. 2195, 2205 n.6 (2009).  OPM identifies no such circumstances here, where the EDR
28   tribunal resolved an employment claim using remedies authorized under the EDR plan.

1  has exceeded his statutory or constitutional authority." *Beeman v. Olson*, 828 F.2d 620, 621 (9th

2  Cir. 1987); *see also Leedom v. Kyne*, 358 U.S. 184, 188 (1958).[2]  Here, Golinski has sued John

3  Berry, Director of OPM, to enjoin him from interfering with the EDR tribunal's order.

4      OPM protests that the EDR tribunal's order was technically directed at OPM, not Berry.

5  (Opp'n at 8 n.5.)  That makes no sense.  Golinski seeks an order from this Court enjoining Berry

6  based on obligations imposed on *him* by the EDR tribunal's order.  To avoid Golinski's claim,

7  Berry must show either that (a) the EDR tribunal's order requires nothing of him, or (b) he is

8  immune from the obligations imposed by that order.  Berry does not even attempt to argue the

9  former.  Instead, he argues that he is immune from the EDR tribunal's order because he was

10  acting within his authority.  (*Id.*)  That is incorrect.

11      Here, Berry exceeded his constitutional authority by refusing to cease OPM's interference

12  with the EDR tribunal's orders, thus violating the separation of powers.  That refusal also

13  exceeded Berry's statutory authority.  OPM contends that Berry has the power to "administer" the

14  federal health plan as to all employees under 5 U.S.C. §§ 2104, 2105, 8901, 8902, 8903, and

15  8913.  (*Id.* at 8 n.5; 14:11-17.)  But those statutes give Berry authority only to (a) "contract" with

16  insurers for health benefits and (b) "prescribe regulations" regarding health benefits.  (Cited at i*d.*

17  at 14:12-17.)  Berry's acts of interference here fall under neither of those categories.

18      OPM then argues that Berry was exercising his "corrective" authority.  OPM contends

19  that, although the Ninth Circuit may make initial health benefits enrollment decisions, those

20  decisions are "subject to OPM's corrective authority," citing 5 C.F.R. § 890.103(b).  (*Id.* at 19:25-

21  26; *see also id.* at 3:13-14.)  But that section only says that "OPM may order correction of an

22  *administrative* error."  5 C.F.R. § 890.103(b) (emphasis added).  Ultimate responsibility for

23  enrollment remains with Golinski's employing office, the Ninth Circuit.  "A suit to compel

24  enrollment . . . must be brought against the employing office that made the enrollment decision,"

25  ─────────────────────────

26      [2] OPM suggests, without explanation, that this rule does not apply where "plaintiff seeks
   to compel the government itself to act."  (Opp'n at 8 n.5.)  That is incorrect.  The sole case on
   which OPM relies expressly holds that sovereign immunity does not apply to "action by officers

27  beyond their statutory powers" or "constitutionally void" conduct.  *Dugan v. Rank*, 372 U.S. 609,
   621-622 (1963).

28

1  not against OPM.  5 C.F.R. § 890.107(a).[3]

2            **3.**      **In Any Event, Any Applicable Immunity Has Been Waived.**

3        Even if sovereign immunity applied, any such immunity has been waived.  As explained

4  in Section II.C.2.a., *infra*, Congress granted the judicial council, which created the EDR tribunal,

5  broad authority to make "necessary and appropriate" orders regarding the administration of

6  justice, without limiting the binding effect of those orders.  That broad statutory authorization

7  waives any purported "immunity" against those orders.[4]

8      **C.**      **Even if OPM Could Collaterally Attack the EDR Tribunal's**
                  **Jurisdiction, Its Attack Fails on the Merits.**

9

10          **1.**      **OPM's Argument Would Deny Judicial Employees Who Suffer**
                      **Discrimination Any Forum Capable of Awarding Full Relief.**

11              **a.**      **The EDR Process Is the Sole Available Avenue of Relief**
                         **for Judicial Employees Like Golinski.**

12

13        OPM repeatedly insists that Golinski has other avenues to redress the discrimination that

14  she continues to suffer.  (Opp'n at 19:15-20:28.)  That is incorrect.

15        Where, as here, a judicial branch employee seeks to challenge a discriminatory personnel

16  action, the EDR process is the sole available avenue of relief.  The Civil Service Reform Act

17  ("CSRA") lays out "comprehensive remedial provisions" for federal employees seeking to

18  challenge employment actions.  *Blankenship v. McDonald*, 176 F.3d 1192, 1195 (9th Cir. 1999).

19  "[T]he comprehensive nature of the procedures and remedies provided by the CSRA indicates a

20          [3] OPM has additional authority to "correct" the actions of *executive* agencies.  5 C.F.R.

21  § 250.103 ("If OPM finds that an agency has taken an action contrary to a law, rule, regulation, or standard that OPM administers, OPM may require the agency to take corrective action."); *see also* 5 C.F.R. § 250.301 ("In this part — Agency means executive agency").  But it has no such

22  power to correct actions of the Judiciary.

23          [4] In addition, as OPM does not dispute, the United States has waived immunity to Golinski's suit under 5 U.S.C. § 702.  Relying on *West v. Gibson*, 527 U.S. 212, 226 (1999),

24  OPM argues that such a waiver would not extend to Golinski's EDR claim.  (Opp'n 8:3-5.)  But OPM relies on the *dissent*.  (*Id.* (quoting *West*, 527 U.S. at 226 (Kennedy, J., dissenting)).)  The

25  majority held that the waiver of immunity in court *did* waive immunity before the administrative agency.  *West*, 527 U.S. at 214.  The majority noted, in dicta, that "ordinary sovereign immunity

26  presumptions [requiring a clear statement of waiver] may not apply" because "the [agency's] preliminary consideration, by lowering the costs of resolving disputes, does not threaten, but

27  helps to protect, the public fisc."  *Id.* at 222.  The same logic applies here.  The EDR tribunal protects the public fisc by providing faster, cheaper dispute resolution without the threat of damages.

28

1   clear congressional intent to permit federal court review as provided in the CSRA or not at all."

2   *Veit v. Heckler*, 746 F.2d 508, 511 (9th Cir. 1984).  For judicial employees, the CSRA bars ***all***

3   resort to the courts for employment actions.  Congress made a "conscious and rational choice" to

4   "exclude judicial branch employees" from suing in court concerning employment matters.

5   *Dotson v. Griesa*, 398 F.3d 156, 176 (2d Cir. 2005).  Instead, judicial employees' sole remedy is

6   "the judiciary's own comprehensive review procedures for adverse employment actions" — the

7   EDR process.  *Id.*  Thus, federal courts, including the Ninth Circuit, have refused to hear *all*

8   employment actions by judicial employees.  *See Blankenship*, 176 F.3d at 1195 (CSRA barred

9   any suit by a court reporter alleging wrongful termination); *Dotson*, 398 F.3d at 163-82 (same for

10  probation officer); *Lee v. Hughes*, 145 F.3d 1272, 1275 (11th Cir. 1998) (same).

11          OPM makes no effort to distinguish that binding case law, cited in Golinski's preliminary

12  injunction motion and the Chief Judge's November Order.  (Mot. at 8:23-28.)  *See In re Golinski*

13  *et ux.*, 587 F.3d 956, 961 (9th Cir. 2009).  Instead, OPM asserts that Golinski could bring her

14  discrimination claim under the Administrative Procedures Act ("APA") or the Federal Employee

15  Health Benefits Act ("FEHBA").  (Opp'n at 19:20-20:14.)  The Ninth Circuit has rejected that

16  view.  *See Veit*, 746 F.2d at 511 (dismissing federal employee's APA suit because "federal courts

17  have no power to review federal personnel decisions and procedures unless such review is

18  expressly authorized by Congress in the CSRA").  Federal employees may not "bypass the

19  CSRA's exhaustive, remedial scheme" by bringing complaints about "prohibited personnel

20  practices" under other statutes.  *Orsay v. United States DOJ*, 289 F.3d 1125, 1130 (9th Cir. 2002)

21  (dismissing federal employee's Privacy Act claim).[5]

22                  **b.      To Remedy Violations Found in the EDR Process, the**
                            **Judiciary Must Be Able to Demand the Executive's**
23                          **Cooperation and Non-Interference.**

24          OPM's position appears to be that the Executive is free not only to ignore the orders of the

25  _____

26          [5] It is hard to see how an FEHBA claim would offer an alternative remedy.  "[A]n
    individual may request an agency or retirement system to reconsider an initial decision of its
27  employing office denying coverage."  5 C.F.R. § 890.104(a).  "A suit to compel enrollment . . .
    must be brought against the employing office that made the enrollment decision."  5 C.F.R.
28  § 890.107.  Golinski's employing office *did not* deny coverage, so what is there to compel?

1    EDR tribunal, but also to actively interfere (as OPM has done here) with those orders.  (Opp'n at

2    9:18-10:13.)  That makes no sense.  Virtually every remedy afforded under the EDR Plan requires

3    some degree of Executive cooperation or non-interference.  To award back pay, the EDR tribunal

4    relies on the Treasury Department to issue the check.  To reinstate an employee, the tribunal

5    relies on OPM to re-enroll the employee in a health plan, on the Treasury to start paying the

6    employee again, and on the U.S. Marshals to let the employee back into the courthouse.

7         OPM's reasoning would leave the Judiciary unable to order even the most basic remedies

8    for unlawful personnel actions without Executive approval and voluntary cooperation.  OPM

9    insists that such a result would not undermine the separation of powers because there would be no

10   interference with the "core *judicial* function of judging cases or controversies."  (*Id.* at 16:4-24

11   (emphasis in original).)  That argument draws a false distinction between the judicial function and

12   the people carrying out those functions.  As the Chief Judge observed, "No less than the other

13   branches of government, the Judiciary is dependent on people to carry out its mission."  *Golinski*,

14   587 F.3d at 961.  "While it may be convenient to have the personnel system of [the Judiciary]

15   covered by the personnel management network of the executive branch, it is contrary to the

16   doctrine of separation of powers."  (*Id.* (quoting H.R. Rep. 101-770(I), at 6 (1990)).)

17        OPM protests that the Judiciary cannot require the Executive's non-interference because

18   the Executive is not a "party" to EDR proceedings.  (Opp'n at 17:2-17.)  As explained above,

19   Golinski's employer, the federal government, *was* a party, and OPM, as part of that same federal

20   government, is bound by the result.  (*See* Section II.A, *supra*.)  Moreover, it is well-established

21   that those who interfere with enforcement of an administrative order may be enjoined, even if

22   such persons were not "parties" to the proceeding in which the order issued.  *See Golden State*

23   *Bottling Co. v. NLRB*, 414 U.S. 168, 180 (1973) (court may enforce NLRB order by enjoining

24   non-parties to the NLRB proceedings); *United States v. Baker*, 641 F.2d 1311, 1314 (9th Cir.

25   1981); *United States v. Hall*, 472 F.2d 261, 265 (5th Cir. 1972).  Without the basic ability to

26   require non-interference with their orders, EDR tribunals would be robbed of their "ability to

27   design appropriate remedies and make their remedial orders effective."  *Hall*, 472 F.2d at 266.

28   The Judiciary would be powerless to order relief unless the Executive agreed with such relief.

**2.    The Chief Judge Correctly Concluded that the Judiciary Has Authority to Provide Golinski a Remedy Without Interference from the Executive Branch.**

It would make no sense for judicial employees' sole recourse to be a procedure that, according to OPM, would be powerless to grant full relief.  Fortunately, that is not the law.

**a.    The EDR Tribunal Has Broad Statutory Authority to Enter Orders "Necessary and Appropriate" for the Administration of Justice.**

OPM insists that the EDR tribunal can have only those powers "specifically granted" by congressional delegation.  (Opp'n at 9:18-23.)  But Congress had no need to delegate specific authority to the EDR tribunal because Congress had already granted broad statutory authority to the judicial councils that created the EDR tribunals.  "Each judicial council shall make all necessary and appropriate orders for the effective and expeditious administration of justice within its circuit."  28 U.S.C. § 332(d)(1).  This delegation specifically includes "[a]dministering the personnel system of the court of appeals of the circuit," a duty which may be "delegated to the circuit executive."  28 U.S.C. § 332(e)(2).

OPM suggests that this broad delegation is limited to issuing orders to judicial employees because the statute refers to the "administration of justice *within its circuit*."  (Opp'n at 10 n.6.)  That indicates only that the Ninth Circuit Judicial Council cannot make orders regarding the administration of justice in other circuits.  "Within its circuit" modifies the phrase "administration of justice," not "orders."  *See In re Imperial "400" Nat. Inc.*, 481 F.2d 41, 52 (3d Cir. 1973) (section 332 avoids "centraliz[ing]" power by creating judicial councils in each circuit).[6]

Case law has repeatedly confirmed that section 332(d) permits the judicial council to make orders that bind persons not part of the Judiciary.  For example, *Hilbert v. Dooling*, 476 F.2d 355 (2d Cir. 1973), held that section 332(d) authorized the judicial council to create court rules requiring federal prosecutors to be ready for trial within a certain time and permitting

---

[6] Section 332(d)(2) provides that "[a]ll judicial officers and employees of the circuit shall promptly carry into effect all orders of the judicial council."  But it is no surprise that Congress granted the judicial council additional powers over those within the Judiciary — the most frequent targets of judicial council orders.  Nothing in that section, however, removes the council's broad powers to make binding orders on other persons.

1  dismissal if they were not. *Id.* at 360. In finding that the judicial council could so bind the

2  executive branch, the court noted that the delegation in section 332 was "as broad as it could

3  possibly be." *Id.* Similarly, in *In re Certain Complaints Under Investigation by an Investigating*

4  *Comm.*, 783 F.2d 1488 (11th Cir. 1986), the court held that the judicial council's subpoena

5  powers, which are part of the council's authority conferred under section 332(d)(1), extended to

6  former employees who no longer worked for the Judiciary. *Id.* at 1491, 1499.

7              **b.      The Judiciary Also Has Inherent Power to Govern Its**
                         **Affairs Without Interference from Other Branches.**
8

9         In addition, the Judiciary possesses the inherent power to manage its own personnel free

10 from Executive interference. "Courts have . . . inherent power to provide themselves with

11 appropriate instruments required for the performance of their duties. This power includes

12 authority to appoint persons unconnected with the court to aid judges in the performance of

13 specific judicial duties." *Ex parte Peterson*, 253 U.S. 300, 312 (1920) (citation omitted). "Every

14 Court has, like every other public political body, the power necessary and proper to provide for

15 the orderly conduct of its business." *Wayman v. Southard*, 23 U.S. 1 (1825).

16        The Judiciary's management of its internal operations is a "necessary" component of

17 judicial independence. As the Judicial Conference observed in its report to Congress, "From the

18 beginning of the federal court system, the hallmarks of judicial branch governance have been

19 local court management and individual judge autonomy." *Dotson*, 398 F.3d at 175 (quoting Jud.

20 Conf., Study of Judicial Branch Coverage Pursuant to the CAA, at 4 (Dec. 1996).) For this

21 reason, the "judiciary's internal governance system is a *necessary corollary* to judicial

22 independence." *Id.* (emphasis added).

23        OPM makes much of the "long history" of Executive administrative support for the

24 courts. (Opp'n at 10:1-13.) But the courts have an even longer history of autonomy over

25 personnel issues. In 1789, Congress gave courts the authority to appoint their own clerks,

26 recognizing the Judiciary's need to control matters affecting its employees to perform the core

27 judicial function of judging cases or controversies. Bermant & Wheeler, *Federal Judges and the*

28 *Judicial Branch*, 46 MERCER L. REV. 835, 853 (1995) (citing Act of Sept. 24, 1789, ch. 20, §§ 2,

4, 1 Stat. 73, 76).  That the Judiciary has enlisted the Executive's help in carrying out some of the

logistics of employment does not undermine the Judiciary's ultimate authority over such matters.

### c.   Congress Has Repeatedly Acknowledged the Judiciary's Inherent and Statutory Power in This Regard.

OPM protests that Congress did not specifically grant EDR tribunals the power to remedy

unlawful personnel actions without interference from other branches.  (Opp'n at 10:14-14:1.)  But

Congress has repeatedly recognized that the Judiciary *already* had that power.

For example, the Administrative Office of the United States Courts Personnel Act of 1990

("AOUSC Act"), Pub. L. 101-474, 104 Stat. 1097, sought to "bring AOUSC employees in line

with the remainder of judicial branch personnel" by subjecting AOUSC employees to the same

workplace complaint procedures as judicial branch personnel.  *Dotson*, 398 F.3d at 171.  In

enacting that Act, Congress acknowledged that the Judiciary ***already*** had power to address

personnel actions concerning its employees without interference from the Executive:

> The Administrative Office is, to a large extent, currently subject to the control of the executive branch in personnel matters.  The United States courts, which it serves, however, are mostly free of such Executive Branch supervision.  The purpose of [this Act] is to authorize the establishment of an independent, self-contained personnel management system within the Administrative Office which is free from executive branch controls and more similar to that of the rest of the judicial branch.

H.R. Rep. 101-770(I), at 6 (1990).

Even more tellingly, Congress provided that the AOUSC would be able to exercise all

powers granted to OPM and other executive agencies in remedying discrimination claims by

AOUSC employees.  The House Report explains:

> [The AOUSC Act] forbids discrimination in employment at the Administrative Office.  Additionally, the legislation ensures that any authority granted under such law to the Equal Employment Opportunity Commission (EEOC), the Office of Personnel Management (OPM), the Merit Systems Protection Board (MSPB), or any other agency in the executive branch shall be exercised by the Administrative Office.

*Id.*  Such authority, apparently, was necessary to give the AOUSC the same powers already

exercised by the rest of the Judiciary.

1    Similarly, in enacting the Congressional Accountability Act of 1995 ("CAA"), 2 U.S.C.

2    § 1302, Congress acknowledged the judicial branch's existing power over workplace claims.  The

3    CAA created an independent legislative office to review legislative employees' claims free from

4    Executive interference.  2 U.S.C. §§ 1381-1385.  "Congress initially considered extending the

5    statute's coverage to employees of the judicial branch but, *mindful of the importance of judicial*

6    *autonomy*, ultimately decided against such action."  *Dotson*, 398 F.3d at 173 (emphasis added).

7    OPM's principal response is to argue that the AOUSC Act and CAA did not confer any

8    powers upon the EDR tribunal.  (Opp'n at 12:6-14:1.)  But that is precisely the point.  Congress

9    recognized that the Judiciary already had power to remedy unlawful personnel actions on its own.

10   ### 3.    Nowhere Does the Chief Judge's Order Claim Plenary Authority to Review OPM's Administration of the FEHB Plan.

11

12   OPM suggests the EDR tribunal overstepped its authority by "reviewing" OPM's

13   administration of the FEHB Plan.  (Opp'n at 14:2-17.)  OPM further notes that the Merit Systems

14   Protection Board ("MSPB"), on which the EDR tribunal is modeled, "lacks jurisdiction to

15   review" challenges to OPM's administration of health benefits.  (Opp'n at 11:3-16.)

16   Nowhere does the Chief Judge find the EDR tribunal has plenary authority to "review"

17   OPM's administration of the FEHB Plan.  Rather, where an EDR tribunal grants a remedy to a

18   judicial employee, the Executive may not interfere with that remedy, even if it disagrees with it.

19   *Golinski*, 587 F.3d at 963.  That is the same authority possessed by MSPB.  MSPB does not have

20   plenary power to review OPM's administration of health benefits, such as its approval of a health

21   plan.  (Opp'n at 11:10-12.)  However, MSPB does have jurisdiction to order that an employee

22   subject to a prohibited personnel practice be reinstated and her benefits restored.  *See, e.g.*,

23   *Godfrey v. DOT*, 2010 MSPB LEXIS 991 (M.S.P.B. Feb. 19, 2010) (adjudicating claim that

24   government "unjustly cancelled [employee's] federal health insurance and sought the premiums

25   owed" in discriminating against her); 5 U.S.C. § 1204(a)(2) ("The [MSPB] shall . . . order any

26   Federal agency . . . to comply with any order . . . and enforce compliance with any such order.").[7]

27   ───────────────

[7] OPM makes much of the fact that "there is no equivalent provision authorizing the establishment of judicial EDR processes" that can order compliance by executive agencies.

28

(Footnote continues on next page.)

III.    **NOTHING ELSE BARS GRANT OF A PRELIMINARY INJUNCTION.**

A.    **Mandamus Relief Is Appropriate to Enforce the Chief Judge's Orders.**

1.    **OPM Misunderstands the Requirement that Its Duty to Comply Be "Free from Doubt."**

OPM claims that Golinski cannot demonstrate likelihood of success because, whether an "EDR hearing officer . . . is empowered to bind the Executive" is "not free from doubt." (Opp'n at 19:10-13.) OPM misunderstands that requirement. A court may issue a writ of mandamus "when the *defendant official's* duty to act is ministerial, and 'so plainly prescribed as to be free from doubt.'" *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994) (emphasis added). The question is whether OPM's duty is plainly prescribed — not whether a reasonable person could disagree with the Chief Judge's order. As OPM does not dispute, its duties are ministerial here.

2.    **The Stay of Blue Cross's EDR Appeal Is Irrelevant.**

In an odd twist, OPM argues that this Court should defer to the very EDR proceedings that OPM claims are illegitimate. According to OPM, mandamus is inappropriate due to a pending appeal from the EDR Orders filed by the Blue Cross and Blue Shield Association ("BCBSA"). (Opp'n at 21:13-26.) OPM complains that Golinski has "avoided . . . review of the EDR Orders" by stipulating with BCBSA to stay that appeal. (*Id.* at 21:21-24.) OPM is wrong.

First, questions related to OPM's duties, having been waived, are not at issue in the BCBSA appeal. But even if they were, OPM's position is disingenuous. OPM has made it clear that it will disobey any *adverse* EDR order, but wants to wait and see if a ruling favorable to OPM issues. OPM should not be permitted to play "heads I win, tails you lose" with this process.

Second, OPM misrepresents the rationale for the stay. The BCBSA appeal argues, in part, that "BCBSA is contractually obligated to abide by OPM's directives on enrollment." (RJN, Ex. A, at 6.) BCBSA asserts that OPM's refusal to obey the Chief Judge's orders places BCBSA between a rock and a hard place — OPM is telling it to do one thing, while the EDR orders

---

(Footnote continued from previous page.)

(Opp'n at 11:23-24.) But that is not surprising. There is no need for such authorization because Congress recognized that the judiciary *already* had that power. (*See supra.*)

1    demand another.  The stay was granted to allow this Court to resolve whether OPM must obey the

2    EDR order to stop interfering with the remedy for the discrimination suffered by Golinski.

3         Finally, the Judicial Council of the Ninth Circuit ordered that this case proceed first.

4    (RJN, Ex. C.)  The Court should decline OPM's request to issue a contrary Order.

5                    **B.    Golinski Will Suffer Irreparable Injury.**

6                         **1.    OPM Waived Any Argument Against Irreparable Injury.**

7         The Chief Judge's Order held that Golinski suffers irreparable injury.  *Golinski*, 587 F.3d

8    at 960.  By declining to appeal that order, OPM has waived any argument to the contrary.

9                         **2.    Golinski Faces Ongoing Discrimination.**

10        Even if not waived, OPM's argument is wrong on the merits.  OPM claims that Golinski

11   merely relies on a "presumption" of irreparable injury.  (Opp'n 23:8-24:2.)  Nowhere in

12   Golinski's opening brief does she make such a claim.  Nor does she have to.  Under well-settled

13   law, "[i]njuries to individual dignity and deprivations of civil rights constitute irreparable injury."

14   *Cupolo v. Bay Area Rapid Transit*, 5 F.Supp.2d 1078, 1084 (N.D. Cal. 1997) (CW).[8]  As the

15   Chief Judge observed, "[e]ven if the destination is the same," there is an "inherent inequality in

16   allowing some employees to participate fully in the FEHBP, while giving others a wad of cash to

17   go elsewhere."  *Golinski*, 587 F.3d at 960.

18        The case law on which OPM relies does not change that.  In *Stanley v. Univ. of S. Calif.*,

19   13 F.3d 1313 (9th Cir. 1994), the court held that plaintiff's injunctive relief claim was not

20   appropriate for preliminary relief because she did not show a likelihood of success, and "[t]o the

21   extent" the plaintiff sought "money damages and back pay," money was adequate.  *Id.* at 1320-

22

23

24        [8] Courts have repeatedly found irreparable injury based on such harm.  *See, e.g.*, *id.*
     (disabled people's lack of reliable access to elevators at BART stations); *Sullivan v. Vallejo City*
25   *Unified Sch. Dist.*, 731 F.Supp. 947, 961 (E.D. Cal. 1990) (refusal to allow student to bring
     service dog to school); *I.M.A.G.E. v. Bailar*, 518 F.Supp. 800, 810 (N.D. Cal. 1981) (disparate
26   impact against Hispanic applicants caused "simple loss of human dignity which results from
     deprivation of employment because of discrimination"); *Chalk v. United States Dist. Ct.*, 840
27   F.2d 701, 710 (9th Cir. 1988) (HIV-positive teacher's reassignment from classroom to
     administrative position); *Kincaid v. City of Fresno*, No. 1:06-cv-1445 OWW SMS, 2006 WL
28   3542732, at *40 (E.D. Cal. Dec. 8, 2006) (due process violations on account of homelessness).

1   21. In *Duke v. Langdon*, 695 F.2d 1136 (9th Cir. 1983), the plaintiff only sought a restraint

2   against termination while her discrimination claims were pending in another forum.  *Id.* at 1137.

3   ### 3.   Inadequate Health Insurance Causes Real Anxiety.

4   OPM suggests that Golinski's claim of irreparable injury is too speculative because she

5   has not shown that her spouse needs immediate care between now and trial.  (*See* Opp'n at 22:1-

6   23:7.)  But no such showing is required.  Irreparable injury can be shown by an underinsured

7   family's undeniable anxiety that a loved one will suffer an injury or illness for which treatment

8   will not be fully insured.  There is an "[i]rreparable harm of anxiety, even for those . . . who

9   ultimately may not take advantage of . . . benefits during the course of this litigation.  Although

10  this type of harm is much less severe than that of an individual who foregoes medical care, it is

11  not *de minimis*."  *Angotti v. Rexam, Inc.*, No. C 05-5264, 2006 WL 1646135, at *16 (N.D. Cal.

12  June 14, 2006) (retirees irreparably harmed even if covered by Medicare); *see Schalk v. Teledyne,*

13  *Inc.*, 751 F. Supp. 1261, 1268 (W.D. Mich. 1990) (premium increase caused loss of "peace of

14  mind" that "cannot be compensated by money damages after the fact").  Insurance is not just to

15  pay bills, but to give policy holders the peace of mind that bills will be paid.  Denial of adequate

16  health insurance for Golinski's spouse robs her family of that assurance.

17  ### 4.   Golinski's Injuries Were Not Compensated by Back Pay Alone.

18  OPM insists back pay can fully compensate Golinski's injuries.  (Opp'n at 22:9-23:7.)

19  That argument ignores the fact that, as the Chief Judge has repeatedly observed, "no health

20  insurance plan on the private market provides exactly the same benefits as Ms. Golinski's

21  FEHBP."  (RJN, Ex. D, at 2.)  Golinski's back pay award was based on the cost of a plan that

22  only "comes closest" to the FEHBP.  (*Id.* at 3.)  But this "computation . . . undervalue[s] the

23  benefit Ms. Golinski is being denied."  (*Id.* at 4; Golinski Decl. ¶ 13.)

24  ### 5.   Golinski Did Not Delay Her Motion for Preliminary Injunction.

25  OPM contends that a preliminary injunction is barred due to Golinski's "delay."  (Opp'n

26  at 24:3-8.)  Golinski filed her motion four weeks after the Chief Judge's December 22 Order.  Of

27  those four weeks, ten days were during the holidays.  Two to three weeks was an entirely

28  reasonable time to prepare a complaint.  *See, e.g.*, *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 419,

GOLINSKI'S PRELIMINARY INJUNCTION REPLY BRIEF
CASE NO. 4:10-cv-00257 (SBA)
pa-1393889

14

1  423 (9th Cir. 1991) (eight-month delay did not bar preliminary injunction); *Momento, Inc. v.*

2  *Seccion Amarilla USA*, No. C 09-1223 (SBA), 2009 WL 1974798, at *4 (N.D. Cal. July 8, 2009)

3  (holding two months reasonable to investigate and prepare filing of complaint).[9]

4        OPM also faults Golinski for taking one week to file her motion after bringing suit.

5  (Opp'n at 24:5-6.)  The bulk of that week, however, was devoted to meeting and conferring with

6  OPM regarding this motion as required by the Court's standing order.  (McGuire Decl.)

7                **C.     The Balance of the Hardships Favors Golinski.**

8        Nowhere in OPM's opposition is there any explanation of any hardship to OPM if a

9  preliminary injunction is entered.  In fact, awarding Golinski money would cost the government

10 *more* than enrolling her spouse in her *fully-paid* family health plan.  (Mot. at 10:18-11:10.)

11               **D.     The Public Interest Favors Golinski.**

12       OPM contends that the public interest is served when the Executive enforces a law, even

13 if the Administration disagrees with that law.  (Opp'n at 24:14-25:11.)  That, however, is not the

14 whole story here.  OPM's interference undermines the Judiciary's authority to manage its own

15 personnel and adjudicate workplace complaints under the EDR plan without interference from

16 other branches.  The public interest is better served by granting Golinski's motion.

17                            **CONCLUSION**

18       For the reasons above, Golinski respectfully requests that the Court grant her motion.

19 Dated: March 19, 2010                MORRISON & FOERSTER LLP
                                       LAMBDA LEGAL
20

21

22                                     By:   /s/ James R. McGuire
                                            JAMES R. McGUIRE
23
                                            Attorneys for Plaintiff
24                                          KAREN GOLINSKI

25       [9] The case law OPM relies on is unavailing.  *Nat'l Council of Arab Ams. v. City of New York*, 331 F. Supp. 2d 258, 266 (S.D.N.Y. 2004), found that the plaintiff *had* been irreparably
26 harmed.  *City of Tempe v. FAA*, 239 F. Supp. 2d 55, 65 n.13 (D.D.C. 2003), involved a delay of five months between the objectionable conduct and the preliminary injunction motion.  And *Fund*
27 *for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975), relied on the fact that the plaintiff timed her motion to coincide with the very day the agency rule at issue became effective.
28